# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| Charleston Automotive Company; Liberty Mutual Fire Insurance Company; and National Fire & Marine Insurance Company, <br><br> Plaintiffs, <br><br><br> v. <br><br> Sedgwick Claims Management Services, Inc., <br><br> Defendant. | Civil Action No.: 3:22-cv-472 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW the Plaintiffs, by and through the undersigned counsel, and as and for their Complaint against Defendant, respectfully allege as follows:

## PARTIES

1.      Plaintiff Charleston Automotive Company (dba Rick Hendrick BMW Charleston) ("Rick Hendrick BMW Charleston") is a general partnership formed under the laws of the State of South Carolina, with its principal place of business in Charleston, South Carolina. None of Charleston Automotive Company's partners or partners' owners are domiciled in Illinois or Tennessee.

2.      Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Boston, Massachusetts.

3.      Plaintiff National Fire & Marine Insurance Company ("National Fire") is a corporation organized and existing under the laws of the State of Nebraska, with its principal place of business in Omaha, Nebraska.

1

4.     Liberty Mutual and National Fire are engaged in the business of insurance, and bring this action both directly and as subrogees of their insured, Rick Hendrick BMW Charleston. They may be referenced occasionally herein as the "Insurers" or "Insurer Plaintiffs."

5.     Defendant, Sedgwick Claims Management Services, Inc. ("Sedgwick"), is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Memphis, Tennessee.

6.     Sedgwick is engaged in claims management services and upon information and belief, is a licensed third party administrator within the State of North Carolina. As relevant here, Sedgwick handled certain third-party liability claims brought against Rick Hendrick BMW Charleston and other member companies of the Hendrick Automotive Group.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

8.     Defendant Sedgwick, is subject to the general jurisdiction of courts situated within the State of North Carolina, as Sedgwick is "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C. Gen. Stat. § 1-75.4 (1).

9.     Additionally, Sedgwick is subject to specific jurisdiction because of the specific activities within the State that gave rise to the instant complaint.

10.    This action "arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State," N.C. Gen. Stat. § 1-75.4 (5).

11.     This action arises, specifically, from a contract entitled "Service Agreement for Administration of a Claims Program" entered into by and between Sedgwick and Hendrick Automotive Group ("Hendrick") (the "Hendrick-Sedgwick Service Agreement").

12.     The Hendrick-Sedgwick Service Agreement was for an initial term of September 1, 2014, through August 31, 2017, and was in full force and effect at all times relevant hereto.

13.     Hendrick is a general partnership formed under the laws of the State of North Carolina, with its principal place of business in Charlotte, North Carolina.

14.     Hendrick is the 89% general partner of Plaintiff Rick Hendrick BMW Charleston.

15.     Under the Hendrick-Sedgwick Service Agreement, Sedgwick's administration of Hendrick's liability claims is "centralized in Charlotte, NC." Moreover, the service program is "coordinated" by a Sedgwick representative in Charlotte, NC.

16.     Sedgwick maintains offices and has a significant employee base within Charlotte, NC. And Sedgwick entered into a contract with a North Carolina general partnership (Hendrick) which is itself headquartered in Charlotte, North Carolina.

17.     In short, if the Western District of North Carolina "were a separate state," Sedgwick's contacts within that "state" "would be sufficient to subject it to personal jurisdiction." 28 U.S.C. §1391(d).

18.     Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b)(1), as Defendant Sedgwick resides within this judicial district.

19.     Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district.

## INTRODUCTION

20.     This action arises from Defendant's mishandling of a product liability claim that was brought against Plaintiff Rick Hendrick BMW Charleston.

21.     Plaintiff Rick Hendrick BMW Charleston had a large deductible ($350,000) on its commercial general liability insurance policy (issued by co-plaintiff, Liberty Mutual), and retained Defendant to provide Claims Services within the deductible layer.

22.     Defendant's Claims Services included the management, adjustment, litigation, and defense of claims.

23.     Suits and claims against Rick Hendrick BMW Charleston (and against other entities within the Hendrick Automotive Group umbrella) would promptly be sent to Defendant for handling; Defendant's claims professionals managed and adjusted the claims from there, with full authority and discretion to, among other things, defend and contest the claims, and retain and pay defense counsel.

24.     On the claim here at issue, a physician suffered gruesome third-degree burns to his lower extremities when the vehicle he was driving (a BMW leased to him by Rick Hendrick BMW Charleston) was struck by an ambulance; radiator fluid spewed over him in the driver's seat compartment.

25.     The claimant (a Mr. Nevins) brought suit against two BMW entities (the manufacturer and designer of the vehicle) and against Rick Hendrick BMW Charleston (the BMW dealership and lessor of the vehicle).

26.     The Nevins suit papers were quickly dispatched to Defendant Sedgwick for handling.

27.     Sedgwick employee Garth Snide assessed, wrongly, that because (in his view) it was not a serious claim, and because (in his view) Rick Hendrick BMW Charleston (a mere lessor, as he saw it) was not a target defendant, he could answer the complaint "in due course."

28.     Mr. Snide contacted the claimant's counsel and obtained a 30-day extension of time to answer the complaint. That was the maximum extension permitted by the governing rules. At that point, Mr. Snide had 53 days to retain defense counsel and timely interpose an answer.

29.     Mr. Snide did not retain counsel to defend the claim. Instead, he did nothing further, until it was too late.

30.     As the deadline to answer was approaching, Mr. Snide did not seek a further extension. At that stage, the rules wouldn't have allowed it, anyway; instead, it would have been necessary to seek leave of court. And that would have meant retaining counsel, which, of course, Mr. Snide (inexplicably) failed and refused to do.

31.     Mr. Snide testified later (in a hearing to set aside entry of default) that he had assessed that there was no real rush, as (in his view) Hendrick was not a target defendant and had no real liability exposure.

32.     Though he'd secured just the one 30-day extension, Snide testified that he believed he could answer "in due course." Snide testified: "The definition of due course can be six months. It can be nine months and a year."

33.     Snide also testified that it was his belief that if claimant Nevins' attorneys were at some point growing impatient at Hendrick's dilatory failure to answer, they would call him and threaten to take a default, and then Snide would rush to retain counsel and get an answer on file.

34.     The presiding judge found that Rick Hendrick BMW Charleston (through its claims manager, Sedgwick) had not shown good cause to set aside the entry of default, as they had not

met the threshold showing of a satisfactory explanation for the failure to timely answer. The Court stated: "I therefore find that the Garth Snide's failure to retain defense counsel on behalf of Rick Hendrick BMW, resulting in Rick Hendrick BMW's failure to timely file an Answer to Plaintiff's Complaint prior to the expiration of the sixty (60) day extension was negligent and does not constitute good cause under Rule 55, SCRCP. I further find Garth Snide was acting as an agent of Rick Hendrick BMW and that his negligence is thereby imputed to Rick Hendrick BMW."

35.     Because of Snide's bungling, Rick Hendrick BMW Charleston was denied the opportunity to contest liability in the Nevin's suit.

36.     A hearing on damages was looming, with no opportunity for any discovery beforehand. Nevins, the plaintiff, was gruesomely disfigured, and was represented by seasoned trial attorneys who'd been awarded several of the highest verdicts in the state.

37.     Rick Hendrick BMW Charleston, Liberty Mutual, and National Fire had no choice but to mediate the case. The parties eventually reached resolution at $4,000,000, with Rick Hendrick BMW Charleston paying $350,000, with Liberty Mutual paying $1,650,000, and with National Fire & Marine paying $2,000,000.

## FACTS COMMON TO ALL COUNTS

38.     For premium paid, Liberty Mutual issued a commercial general liability insurance policy in favor of Hendrick Automotive Group and Rick Hendrick BMW Charleston (among others), as named insureds.

39.     The Liberty Mutual policy provided for limits of $2,000,000 per covered occurrence, and provided for a $350,000 per claim deductible amount to be borne by the named insureds.

40.     For premium paid, National Fire issued an excess liability insurance policy in favor of Hendrick Automotive Group and Rick Hendrick BMW Charleston (among others), as named insureds.

41.     The National Fire policy provided for limits of $10 million per occurrence, excess of Liberty Mutual's underlying $2 million in limits.

**Sedgwick's Claims Services Agreement with Liberty Mutual**

42.     Liberty Mutual entered into a Claims Services Agreement with Sedgwick, with a term commencing January 1, 2017 (the "Liberty-Sedgwick Services Agreement").

43.     Under the Liberty-Sedgwick Services Agreement, Sedgwick was obligated to, and did, serve as a third-party administrator, or TPA, and to provide Claims Services to Liberty Mutual and to certain Liberty Mutual insureds.  The term "Claims Services" was defined to mean "the administration, management, adjustment, investigation, evaluation, defense, dispute, litigation, settlement or payment of all "Qualified Claims" to their conclusion…"

44.     Within the Liberty-Sedgwick Services Agreement, Sedgwick agreed, *inter alia*, that as part of its Claims Services it would, without reliance on Liberty Mutual: "Provide an adequate number of qualified and, where applicable, licensed individuals to perform Claims Services in a competent and professional manner, consistent with the highest standards of practice in the industry"; "retain competent and experienced counsel, experts, private investigators, medical and other service providers"; "work with counsel to establish litigation plans and manage litigation"; and "provide and document supervisory oversight of claims." Liberty-Sedgwick Services Agreement at 5, Performance of Claims Services, (a) In general, (ii), (vi), (vii), (xii).

45.     The Liberty-Sedgwick Services Agreement contemplated that Sedgwick would separately "contract with Client [i.e., Liberty Mutual's insureds] for direct payment of claims

service fees by the Client" and "for direct payment of all Loss and ALAE [Allocated Loss Adjustment Expense] up to the deductible amount…" Liberty-Sedgwick Services Agreement at 4., Obligation for Payment, (a), (b).

46.     The Liberty-Sedgwick Services Agreement provided: "In the event of any conflict between this Agreement and any other agreement, written or oral, between the Client and the TPA, including their successors and assigns, the terms of this Agreement shall control the rights and duties of the TPA and the Company as between each other." Liberty-Sedgwick Services Agreement at 25., Agreement Controlling.

### Sedgwick's Claims Services Agreement with Hendrick

47.     As planned, Sedgwick entered into the Services Agreement with Hendrick Automotive Group and its member companies ("Client"), and agreed to provide the claims services specified therein, reciting that "Client's carrier ("Insurer") has agreed that these claims services will be provided by Sedgwick, subject to the terms of a separate written agreement between Sedgwick and Insurer."

48.     Under the Hendrick-Sedgwick Services Agreement, Sedgwick was obligated, *inter alia*, to: "Conduct an investigation of each Qualified Claim to the extent deemed necessary by Sedgwick in the performance of its obligations hereunder"; and to "Pay benefits, expenses, and adjust or settle each Qualified Claim, but only if in the sole judgment of Sedgwick such payment would be prudent for Client and the anticipated amount thereof does not exceed" $15,000.  Hendrick-Sedgwick Services Agreement at 1., Services to be performed by Sedgwick, A., (2), (4).

49.     The term "Qualified Claim" was defined as "all claim and loss reports received from Client that are required to be reviewed under the Program" [i.e., Sedgwick's administration

of Hendrick's general liability, automobile liability, and workers' compensation claims]. Hendrick-Sedgwick Services Agreement at 1. A., (1).

50.     Hendrick, the "Client" under the Services Agreement, was obligated to, and did, deposit funds in an escrowed Claim Account, and to replenish funds from time to time thereafter, to enable Sedgwick to pay Loss and Allocated Loss Adjustment Expenses on the serviced claims.

51.     The Claim Account was at all times timely and properly funded.

52.     Under the Hendrick-Sedgwick Services Agreement, Sedgwick had "full discretion to make an allocated loss adjustment expense in an amount up to $15,000." It was also agreed that "Sedgwick shall have full authority and control in all matters pertaining to the payment, processing, investigation and administration of Qualified Claims within the limit established by this paragraph." Services Agreement at 2. F.

53.     Within the Hendrick-Sedgwick Services Agreement, the term "allocated loss adjustment expense shall mean all costs, charges or expenses incurred by Sedgwick, its agents or its employees which are properly chargeable to a Qualified Claim including, without limitation, court costs, fees and expenses of attorneys…" Hendrick-Sedgwick Services Agreement at 2., C.

**The Nevins Claim**

54.     Joseph Nevins, as plaintiff, represented by the firm Peters, Murdaugh, Parker, Eltzroth & Detrick, P.A., brought suit against Bayerische Motoren Werke AG, BMW of North America, LLC, and Charleston Automotive Company dba Rick Hendrick BMW of Charleston (the "Nevins Action").

55.     The Nevins Action was venued in the South Carolina Circuit Court, Ninth Judicial District, Court of Common Pleas, case no. 2021-CP-10-01133.

56.     In his complaint, Nevins alleged that on August 31, 2020, he was driving a 2020 BMW 230i, which had been leased to him by Rick Hendrick BMW Charleston.  Nevins' vehicle was struck on the driver's side by an oncoming ambulance.  The radiator and/or radiator hose ruptured upon impact and caused a large amount of radiator fluid to spew into the driver's seat compartment.  Nevins suffered disfiguring third-degree burns to his lower extremities.

### Sedgwick's Failure to Timely Answer the Nevins Action

57.     On March 12, 2021, Rick Hendrick BMW Charleston was served with process in the Nevins Action.

58.     Rick Hendrick BMW Charleston had 30 days from then, i.e., until April 11, 2021, to answer the Nevins complaint.

59.     Rick Hendrick BMW Charleston did promptly and properly give notice to Sedgwick of the Nevins Action (a "Qualified Claim").

60.     On March 19, 2021, at 3:00 pm, Mr. Garth Snide of Sedgwick left a voicemail message for Nevins' counsel, Austin Crosby.  He identified himself as being "with Sedgwick Corporation, the largest claims company," he identified his client, "Hendrick BMW Charleston," and he stated "I need to get this appointed to counsel down there in Charleston."  He also stated: "I will get this assigned; it's just going to take me a few days, so I was going to call and ask for a quick extension so I could get local counsel assigned to give you a call."

61.     On March 19, 2021, at 3:26 pm, Mr. Crosby returned Mr. Snides' call and agreed to extend the answer deadline by 30 days.  That is the maximum extension permitted by the South Carolina Rules of Civil Procedure, 6(b).

62.     On March 19, 2021, at 3:51 pm, Mr. Snide sent an e-mail to Mr. Crosby, identifying himself as the third-party claims administrator for Hendrick Automotive Group, confirming the

30-day extension of time to answer the complaint, and stating that he would arrange for assigned defense counsel to contact Mr. Crosby "in due course."

63.     With this extension, the deadline for Rick Hendrick BMW Charleston to file an answer to the Nevins complaint was May 11, 2021 (i.e., 53 days from the time Mr. Snide had purportedly first received the complaint, and 53 days from the time when he stated that "it's just going to take [him] a few days…to get local counsel assigned").

64.     Mr. Snide did not retain counsel to defend Rick Hendrick BMW Charleston.

65.     On May 27, 2021, by Order of the Hon. Roger M. Young, Sr., default was entered against Rick Hendrick BMW Charleston in the Nevins Action.

66.     On August 10, 2021, Nevins' counsel duly served upon Rick Hendrick BMW Charleston a Notice of Hearing, notifying of a damages hearing before the court scheduled for August 18, 2021.

67.     On August 13, 2021, Mr. Snide of Sedgwick – for the first time - assigned counsel (Clement Rivers LLP) to represent Rick Hendrick BMW Charleston in the Nevins Action.

68.     On or about August 17, 2021, counsel assigned by Mr. Snide moved in the Nevins Action for leave to file a late answer, moved to set aside the entry of default, and filed an objection to proceeding with the scheduled damages hearing.

69.     On August 18, 2021, a hearing was held in the Nevins Action before the Hon. Mikell R. Scarborough.  While it was originally scheduled to be a damages hearing against Rick Hendrick BMW Charleston, Nevins' counsel agreed to take that off the calendar and to instead proceed with a hearing on Rick Hendrick BMW Charleston's motions.

70.     Mr. Snide both submitted an affidavit in advance of the hearing and testified at the hearing.

71.     Asked at the hearing if he had ever (before the default) assigned this case to counsel, Snide responded: "Based on our conversation, I felt there was no need."

72.     Snide testified that while plaintiff's attorneys may grant an extension of a set number of days, it's generally understood and expected (by him, anyway) that he can take his time and assign counsel to answer the complaint only when plaintiff's counsel becomes impatient and prods him along, with a phone call threatening a default.

73.     While he may have been granted simply a 30-day extension (the longest extension permitted by the Rules), Snide himself regarded it as an open-ended extension.

74.     Snide testified that it was his belief that the Nevins complaint was a BMW (manufacturer, designer) issue and not a Hendrick (dealer/lessor) issue, as Hendrick hadn't designed or manufactured the car, and was not, in his view, a target defendant; for that reason, Snide believed that he could respond to the complaint "in due course," which he defined as "six months.  It could be nine months or a year."

75.     By Order issued October 7, 2021, the Hon. Mikell R. Scarborough denied Rick Hendrick BMW Charleston's motion to set aside entry of default, and also denied Rick Hendrick BMW Charleston's motion to file a late answer.  See Order attached as Exhibit A.

76.     Judge Scarborough found that there had been but one 30-day extension of time to answer granted.  See Ex. A at p. 3. The Court further found: "Rick Hendrick BMW has failed to meet its threshold requirement of demonstrating that there is a satisfactory explanation for the failure to timely answer Plaintiff's Complaint which is necessary in order to show 'good cause' to set aside the entry of default under Rule 55(c), SCRCP." Ex. A at p. 5.

77.     Judge Scarborough wrote dismissively of Snide's proffered explanations: "Mr. Snide testified that his understanding of the meaning of 'due course' was based on his

understanding of British verbiage, and that the definition of due course can be six months, nine months, or even as much as a year. Mr. Snide also testified that it is his job to get a claim to defense counsel at the appropriate time, and that his only explanation as to why he failed to engage defense counsel until August 13, 2021, was based on his subjective interpretation of a single ten (10) minute phone conversation with Mr. Crosby." See Ex. A at p. 8.

78.     Judge Scarborough concluded: "I therefore find that Garth Snide's failure to retain defense counsel on behalf of Rick Hendrick BMW, resulting in Rick Hendrick BMW's failure to timely file an Answer to Plaintiff's Complaint prior to the expiration of the sixty (60) day extension was negligent and does not constitute good cause under Rule 55, SCRCP. I further find Garth Snide was acting as an agent of Rick Hendrick BMW and that his negligence is thereby imputed to the Rick Hendrick BMW."  See Ex. A at p. 8.

79.     Rick Hendrick BMW Charleston and its insurers thereby lost the opportunity to contest liability on the Nevins Action.

80.     A hearing on damages was looming, with no opportunity for any discovery beforehand.

81.     Nevins, the plaintiff, was gruesomely disfigured, and was represented by seasoned trial attorneys who've been awarded several of the highest verdicts in the state.

82.     Rick Hendrick BMW Charleston, Liberty Mutual, and National Fire & Marine had no choice but to mediate the case.  The parties eventually reached resolution at $4 million, with Rick Hendrick BMW Charleston paying $350,000, with Liberty Mutual paying $1,650,000, and with National Fire & Marine paying $2,000,000.

83.     Had Mr. Snide of Sedgwick properly discharged his duties by timely assigning defense counsel and ensuring that an answer to the Nevins Action was timely filed: (i) Rick

Hendrick BMW Charleston (the car dealership) would have successfully sought defense and indemnity from the two BMW (design/manufacturer) co-defendants; and (ii) Rick Hendrick BMW Charleston and its insurers would have paid nothing in settlement.

84.     Snide's egregious mishandling of the Nevins Action thus caused the Plaintiffs $4.5 million in damages.

**AS AND FOR A FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Hendrick-Sedgwick Services Agreement)**

85.     Plaintiffs repeat, re-allege, and incorporate herein all of the preceding paragraphs of this Complaint, with the same force and effect as if each were set forth at length herein.

86.     The Hendrick-Sedgwick Services Agreement is a valid, binding, and enforceable contract between, on the one hand, Hendrick and Rick Hendrick BMW Charleston, and Sedgwick, on the other.

87.     While Rick Hendrick BMW Charleston is not itself a signatory to the Hendrick-Sedgwick Services Agreement, the Agreement extends to Hendrick's entire claims administration Program, and its general liability, automobile liability, and workers' compensation claims.

88.     Rick Hendrick BMW Charleston is a named insured under all of the relevant policies, complete copies of which were required to be, and were, delivered to Sedgwick in connection with the Hendrick-Sedgwick Services Agreement.

89.     Hendrick is the 89% general partner of Rick Hendrick BMW Charleston.

90.     The Hendrick-Sedgwick Services Agreement was entered into for the direct benefit of not only Hendrick but also the many companies (with significant claims volume) within the Hendrick umbrella, including Rick Hendrick BMW Charleston.

91.     In entering into the Hendrick-Sedgwick Services Agreement, Sedgwick knew and agreed that it would be providing claims services for, and endeavoring to confer a benefit upon, Rick Hendrick BMW Charleston.

92.     Liability claims against Rick Hendrick BMW Charleston were regularly and routinely handled by Sedgwick, under the Hendrick-Sedgwick Services Agreement.

93.     Rick Hendrick BMW Charleston is an intended beneficiary of the Hendrick-Sedgwick Services Agreement and has standing to maintain an action in contract for its breach.

94.     In connection with the Nevins Action, and in connection with all else arising under the Hendrick-Sedgwick Services Agreement, Hendrick and Plaintiff Rick Hendrick BMW Charleston did fully, properly, and faithfully discharge all conditions, covenants, and conditions imposed upon them.

95.     To the detriment and damage of the Plaintiffs, Sedgwick breached its promises, representations, warranties, and obligations under the Hendrick-Sedgwick Agreement by, among other things:

    a.  Failing to exercise reasonable care in performing its obligations in respect of the Nevins Action;

    b.  Failing to observe industry-standard claims handling practices;

    c.  Failing to conduct a reasonable and proper investigation, evaluation, and adjustment of the Nevins Action;

    d.  Failing to apprehend that its "Client," Rick Hendrick BMW Charleston, while not a "target defendant" (in Snide's view, anyway), faced claims sounding in strict liability, and faced significant exposure;

e. Failing to apprehend that the Nevins Action (like all suits against its "Clients") needed to be properly and promptly defended, within established rules of civil procedure;

f. Failing to assign to the Rick Hendrick BMW Charleston account, and specifically to the handling and management of the Nevins Action, a claims handler qualified to handle the claim in a competent and professional manner;

g. Failing to properly train, supervise, direct, manage, and oversee its employee, Snide, and others who may have been working with him;

h. Failing to incur the minimal expense of having counsel prepare and file an answer, though vested with the authority in its "sole judgment" to determine what claims expenses "would be prudent for Client";

i. Failing to retain defense counsel to interpose a timely answer to the Nevins Action on behalf of Rick Hendrick BMW Charleston, a failure that, by Order of the Hon. Mikell R. Scarborough (following both written submissions and an evidentiary hearing) was already adjudicated to be "negligent";

j. Failing to promptly tender the defense of the Nevins Action to the BWM co-defendants;

k. Failing to monitor the court filings in the Nevins Action;

l. Failing to properly record and calendar the applicable deadlines in the Nevins Action;

m. Failing to apprehend that its (or its employees') subjective interpretation of the term "in due course" (i.e., "six months… nine months or a year") did not square with, or trump, the unequivocal deadlines imposed by actual rules of court and civil procedure; and

n. Failing to apprise the "Client" (and its Insurers, co-Plaintiffs herein) that it would manage and handle claims not in accordance with black letter law, rules, and procedure,

but pursuant to the whims and subjective interpretations of its colorful and incompetent employees.

96. By reason of the foregoing breaches, Plaintiff Rick Hendrick BMW Charleston was caused to, and did, suffer monetary damages, in the amounts aforesaid.

97. Having paid the foregoing sums on behalf of their insured in settlement of the Nevins Action, Liberty Mutual and National Fire do now– by the terms of the insurance policies and by operation of law – stand in the shoes of their insured, Rick Hendrick BMW Charleston, and to the extent of their payments are subrogated to Rick Hendrick BMW Charleston's interests, and to its remedies, claims, causes of action, and rights of recovery.

98. Liberty Mutual and National Fire assert this cause of action for breach of the Hendrick-Sedgwick Agreement not only derivatively, as subrogees of Rick Hendrick BMW Charleston, but also directly, as intended beneficiaries of that agreement.

99. By reason of the foregoing breaches, Plaintiffs Liberty Mutual and National Fire & Marine were caused to, and did, suffer monetary damages, in the amounts aforesaid.

100. Defendant is answerable in damages for breach of contract both to Rick Hendrick BMW Charleston (Defendant's "Client" and contract counterparty) and to the Insurer Plaintiffs (both as direct beneficiaries and derivatively, as subrogees), in the sum of $4 million, plus interest thereon, costs of suit, and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
#### (Liberty-Sedgwick Services Agreement)

101. Plaintiffs repeat, re-allege, and incorporate herein all of the preceding paragraphs of this Complaint, with the same force and effect as if each were set forth at length herein.

102.     The Liberty-Sedgwick Services Agreement is a valid, binding, and enforceable contract between Liberty Mutual and Sedgwick.

103.     Within the Liberty-Sedgwick Services Agreement, Sedgwick committed to providing claims services to Liberty Mutual's insureds, including Rick Hendrick BMW Charleston.

104.     Sedgwick undertook this role as TPA for the express purpose of "perform[ing] certain duties under the Policies with respect to the administration and disposition of certain claims that the Company [Liberty Mutual] would otherwise have the exclusive right to perform." Liberty-Sedgwick Services Agreement at p. 1, recitals.

105.     An insurer like Liberty Mutual owes to its insureds a myriad of significant and solemn duties.

106.     The proper discharge of those duties is the cornerstone of an insurer's business, and is the source of its "reputation, credibility, and good standing in the marketplace," as the Liberty-Sedgwick Services Agreement recognized.

107.     Sedgwick owed to Liberty Mutual (and to its insureds) the duty to "perform its obligations under this Agreement…with utmost good faith." Liberty-Sedgwick Services Agreement at 8.(a).

108.     Sedgwick's bungling and mishandling of the Nevins Action was an egregious breach of duties owed under the Liberty-Sedgwick Services Agreement, as detailed further herein.

109.     When handling and managing claims under a general liability policy, particularly when dealing (as here) with a policy where the insured has a significant deductible layer, the claims handler is managing, protecting, and defending the interests of both insurer and insured.

110. The very essence of the Liberty-Sedgwick Services Agreement was the provision of these claims services for the insured's direct benefit.

111. While Rick Hendrick BMW Charleston had a separate agreement with Sedgwick (the many breaches of which were set forth *supra*), Rick Hendrick BMW Charleston was also an intended beneficiary of the Liberty-Sedgwick Services Agreement, and has standing to maintain this separate cause of action in contract for its breach.

112. National Fire is also an intended beneficiary of the Liberty-Sedgwick Services Agreement.

113. The actions taken by one handling a claim on a primary policy can have (and here did have) very significant consequences for an insurer sitting on the excess layer.

114. Sedgwick undertakes these claims management duties with the knowledge that its breaches, errors, and omissions will reverberate throughout the insurance tower, from the insured (for its deductible share) all the way through the excess layer of National Fire.

115. National Fire asserts this cause of action for breach of the Liberty-Sedgwick Services Agreement both directly (as an intended beneficiary thereof in its own right), and derivatively, as subrogee of Rick Hendrick BMW (National Fire's insured, and an intended beneficiary).

116. To the detriment and damage of the Plaintiffs, Sedgwick breached its promises, representations, warranties, and obligations under the Liberty-Sedgwick Agreement by, among other things:

    a. Failing to exercise reasonable care in performing its obligations in respect of the Nevins Action;

    b. Failing to follow, comply with, and observe industry-standard claims handling practices;

c. Failing to follow, comply with, and observe Liberty Mutual's litigation management program guidelines;

d. Failing to follow, comply with, and observe Sedgwick's own litigation management program guidelines;

e. Failing to conduct a reasonable and proper investigation, evaluation, and adjustment of the Nevins Action;

f. Failing to apprehend that its "Client," Rick Hendrick BMW Charleston, while not a "target defendant" (in Snide's view, anyway), faced claims sounding in strict liability, and faced significant exposure;

g. Failing to apprehend that the Nevins Action (like all suits against its "Clients") needed to be properly and promptly defended, within established rules of civil procedure;

h. Failing to assign to the Rick Hendrick BMW Charleston account, and specifically to the handling and management of the Nevins Action, a claims handler qualified to handle the claim in a competent and professional manner;

i. Failing to properly train, supervise, direct, manage, and oversee its employee, Snide, and others who may have been working with him;

j. Failing to retain defense counsel to interpose a timely answer to the Nevins Action on behalf of Rick Hendrick BMW Charleston, a failure that, by Order of the Hon. Mikell R. Scarborough (following both written submissions and an evidentiary hearing) was already adjudicated to be "negligent";

k. Failing to promptly tender the defense of the Nevins Action to the BWM co-defendants;

l. Failing to monitor the court filings in the Nevins Action;

m. Failing to properly record and calendar the applicable deadlines in the Nevins Action;

n. Failing to apprehend that its (or its employees') subjective interpretation of the term "in due course" (i.e., "six months… nine months or a year") did not square with, or trump, the unequivocal deadlines imposed by actual rules of court and civil procedure; and

o. Failing to apprise Liberty and its insured that it would manage and handle claims not in accordance with black letter law, rules, and procedure, but pursuant to the whims and subjective interpretations of its colorful and incompetent employees.

117. By reason of the foregoing breaches, Plaintiff Liberty Mutual was caused to, and did, suffer monetary damages, in the amounts aforesaid.

118. By reason of the foregoing breaches, Plaintiffs Rick Hendrick BMW Charleston and National Fire were caused to, and did, suffer monetary damages, in the amounts aforesaid.

119. Defendant is answerable in damages for breach of contract both to Liberty Mutual, its contract counterparty, and to intended beneficiaries Rick Hendrick BMW Charleston and National Fire, in the sum of $4 million, plus interest thereon, costs of suit, and attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
## NEGLIGENCE

120. Plaintiffs repeat, re-allege, and incorporate herein all of the preceding paragraphs of this Complaint, with the same force and effect as if each were set forth at length herein.

121. Sedgwick owed a duty to the Plaintiffs to handle competently and professionally the liability claims asserted against Rick Hendrick BMW Charleston.

122. Sedgwick owed a duty to the Plaintiffs to exercise reasonable care in the provision of claims services.

123.     Sedgwick owed a duty to the Plaintiffs to exercise reasonable care in the selection, training, management, and supervision of those employees, including Snide, who would be entrusted with handling and managing claims on the Rick Hendrick BMW Charleston program.

124.     Sedgwick owed a duty to the Plaintiffs to ensure that claims against Rick Hendrick BMW Charleston were managed and defended properly, prudently, and carefully, with that knowledge, skill, and degree of care expected of one holding himself out as a licensed and qualified claims professional and third party administrator.

125.     Sedgwick owed a duty to the Plaintiffs to manage, defend, and handle claims in accordance with industry standard best practices and in accordance with its own claims and litigation management guidelines.

126.     Sedgwick owed a duty to the Plaintiffs to ensure that Rick Hendrick BMW Charleston's litigated claims would be handled by persons knowledgeable in the applicable laws and rules of civil procedure.

127.     Sedgwick did negligently, carelessly, and recklessly breach the foregoing duties by, among other things:

   a.  Failing to exercise reasonable care in performing its obligations in respect of the Nevins Action;

   b.  Failing to follow, comply with, and observe industry-standard claims handling practices;

   c.  Failing to follow, comply with, and observe its own litigation management program guidelines;

   d.  Failing to conduct a reasonable and proper investigation, evaluation, adjustment, and defense of the Nevins Action;

e. Failing to apprehend the severity of the Nevins Action;

f. Failing to apprehend the principles of law applicable to a claim like that posed in the Nevins Action;

g. Failing to apprehend that the Nevins Action needed to be properly and promptly defended, within established rules of civil procedure;

h. Failing to ensure that the Nevins Action was in fact properly and promptly defended;

i. Failing to assign to the Rick Hendrick BMW Charleston account, and specifically to the handling and management of the Nevins Action, a claims handler qualified to handle the claim in a competent and professional manner;

j. Failing to properly train, supervise, direct, manage, and oversee its employee, Snide, and others who may have been working with him;

k. Failing to retain defense counsel to interpose a timely answer to the Nevins Action on behalf of Rick Hendrick BMW Charleston, a failure that, by Order of the Hon. Mikell R. Scarborough (following both written submissions and an evidentiary hearing) was already adjudicated to be "negligent";

l. Failing to promptly tender the defense of the Nevins Action to the BWM co-defendants;

m. Failing to monitor the court filings in the Nevins Action;

n. Failing to properly record and calendar the applicable deadlines in the Nevins Action; and

o. Failing to apprehend that its (or its employees') subjective interpretation of the term "in due course" (i.e., "six months… nine months or a year") did not square with, or trump, the unequivocal deadlines imposed by actual rules of court and civil procedure.

128.     By reason of the foregoing breaches (and others, to be proven at trial), Defendant did cause the Plaintiffs to incur damages, with no fault, act, omission, or lack of care on the part of Plaintiffs contributing thereto.

129.     By reason of the foregoing, Plaintiffs have been damaged in the sum of $4 million, plus interest thereon, costs of suit, and attorney's fees, and Defendant is answerable in damages therefor.

**WHEREFORE**, the Plaintiffs pray for judgment in their favor, and against Defendant, as follows:

i.      On the first cause of action, for compensatory damages in the principal amount of $4,000,000.00;

ii.     On the second cause of action, for compensatory damages in the principal amount of $4,000,000.00;

iii.    On the third cause of action, for compensatory damages in the principal amount of $4,000,000.00;

iv.     For pre-judgment interest on the foregoing sum, at the legal rate, accruing from the dates of Plaintiffs' payments;

v.      For costs of suit incurred herein and reasonable attorney's fees; and

vi.     For such other and further relief as the Court in its discretion may deem just, proper, and equitable.

## <u>JURY DEMAND</u>

Plaintiffs request a trial by jury on all issues so triable.

DATED: September 12, 2022

By:  /s/ *Doug Grimes*
J. Douglas Grimes, NC Bar #32699
Anna C. Majestro, NC Bar # 50850
**ALLEN, CHESSON & GRIMES PLLC**
505 N. Church Street
Charlotte, North Carolina 28202
Telephone: 704.755.6010
dgrimes@allenchesson.com
amajestro@allenchesson.com

Matthew D. Kennedy
(*pro hac vice* application forthcoming)
**FITZPATRICK & HUNT,**
**PAGANO, AUBERT, LLP**
Twelve East 49th Street; 31st Floor
New York, New York 10017
(212) 937-4000 (telephone)


*Attorneys for Plaintiffs,*
*CHARLESTON AUTOMOTIVE GROUP*
*dba RICK HENDRICK BMW*
*CHARLESTON, LIBERTY MUTUAL FIRE*
*INSURANCE COMPANY, and NATIONAL*
*FIRE & MARINE INSURANCE COMPANY*